Calvin F. SMITH, Plaintiff,

v.

Norman CARLSON et al., Defendants.

Civ. A. No. 77–141.

United States District Court,
M. D. Pennsylvania.

March 23, 1978.

Calvin F. Smith, pro se.

S. John Cottone, U. S. Atty., Scranton, Pa., Joseph Cimini, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

This action had its genesis in a habeas corpus action filed by Plaintiff on October 7, 1975, in the United States District Court for the District of Columbia. *Smith v. Carlson,* Civil No. 75–1656 (D.D.C., filed Oct. 7, 1975). That action was transferred to this Court. Civil No. 75–1541 (M.D.Pa., filed Dec. 17, 1975). In that action, Plaintiff challenged the constitutionality of this transfer from the Lorton Correctional Complex, Virginia, to the United States Penitentiary, Lewisburg, Pennsylvania.[1]

The record in Civil No. 75–1541 indicates that in 1973 Plaintiff was sentenced to three concurrent terms for violating the District of Columbia Code: Petitioner received a life term for first degree murder, a five to fifteen year term for first degree burglary and a second five to fifteen year term for armed robbery. Pursuant to section 24–425 of the D.C.Code,[2] the Attorney General of the United States designated Lorton as Plaintiff's place of confinement. On September 25, 1975, while on furlough from Lorton, Plaintiff was arrested at Union Station, Washington, D. C., as he was about to board a train to New York City. At the time of his arrest, Plaintiff was carrying a sawed-off shotgun. The next day, September 26, 1975, Plaintiff was transferred to the United States Penitentiary at Lewisburg, Pennsylvania, without a hearing. Plaintiff alleged that upon his arrival at Lewisburg, he was segregated for one month. He did not allege that he lost any good time or was otherwise disciplined upon arriving at Lewisburg.[3] Plaintiff is still confined at Lewisburg. On October 8, 1976, this Court denied the petition for a writ of habeas in Civil No. 75–1541 for failure to exhaust administrative remedies, noting that if administrative appeals proved futile, further review would then be available.[4]

Plaintiff filed the instant action on February 18, 1977. In his complaint, Plaintiff alleges that the defendant prison officials have made "a concerted and systematic effort . . . to keep plaintiff from pursuing his [administrative] remedies" and have attempted to transfer him from Lewisburg in retaliation for his previously having filed suit against them. As relief, Plaintiff seeks damages and an order enjoining Defendants from transferring him to the United States Penitentiary at Leavenworth, Kansas.

1. The validity of this transfer was also raised unsuccessfully in *Smith v. Saxbe,* 562 F.2d 729, 735 (D.C.Cir.1977). Whether the grounds raised in that case were identical to those relied upon in this Court is not apparent from the reported opinion.

2. Section 24–425 of the D.C.Code provides, in part, that:

"All prisoners convicted in the District of Columbia for any offense . . . shall be committed . . . to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons."

3. *See* Complaint in Civil No. 75–1541.

4. *See* M.D.Pa.Civil No. 75–1541, Memorandum and Order of October 8, 1976 at 4.

On March 22, 1977, Petitioner filed a document which the Court construed as an amendment to his complaint.[5] The amendment adds allegations challenging the validity of Petitioner's transfer from Lorton to Lewisburg on September 26, 1975.

Presently before the Court is Defendants' motion to dismiss, or, in the alternative, for summary judgment. Petitioner has opposed Defendants' motion. Plaintiff has also moved for partial summary judgment on the issue of the validity of the transfer from Lorton to Lewisburg. Defendants have opposed this motion.

### Count I

The Court will treat Plaintiff's allegations that Defendants are preventing him from pursuing administrative remedies and that they are attempting to transfer him out of a retaliatory motive.

■ Plaintiff's contention that Defendants are attempting to prevent him from pursuing administrative remedies will be dismissed as frivolous under 28 U.S.C. § 1915(d). *See Clark v. Zimmerman,* 394 F.Supp. 1166, 1178 (M.D.Pa.1975) (no chance of success on merits). Bureau of Prisons Policy Statement No. 2001.6A (10–18–74) requires an inmate who wishes to file a request for administrative remedy to "give the completed form [BP–9] to the designated staff member who in turn will provide a signed receipt for him".

B.P. Statement No. 2001.6A at 3. The only facts alleged by Plaintiff in support of his contention appear at Paragraph 9 of his complaint and indicate that he *mailed* his requests to Warden Fenton. Thus, Plaintiff's own factual allegations demonstrate that he did not follow the procedure prescribed by B.P. Statement 2001.6A for filing a request for administrative remedy. Plaintiff's failure to follow the prescribed procedure can hardly be characterized as "a

concerted and systematic effort by defendants used to keep plaintiff from pursuing his remedies". Complaint at ¶ 11.

With the dismissal of Plaintiff's allegations that Defendants are preventing him from pursuing administrative remedies, the only issue remaining in Count I is whether, as Plaintiff alleges, Defendants are seeking to transfer him in retaliation for his having previously filed suit against them.[6] Defendants have moved that Plaintiff's request for an order enjoining Defendants from transferring him to Leavenworth be dismissed as moot. From the affidavit of Case Management Coordinator Sinsheimer, *see* Document 23, it is clear that Plaintiff is no longer scheduled to be transferred to Leavenworth. However, Sinsheimer states that Plaintiff is now scheduled for transfer to Atlanta and is being held in Lewisburg, "pending the resolution of litigation in the U. S. District Court". In view of Sinsheimer's representation that Plaintiff is being held in this District pending the disposition of this litigation, and in view of the fact that he is no longer scheduled for transfer to Leavenworth, the Court will dismiss his request for injunctive relief as moot. As no transfer to Leavenworth is now contemplated, Plaintiff has suffered no injury and his claim for damages will also be dismissed.[7]

### Count II

The Court considers the Lorton transfer issue as a habeas corpus claim and will treat it as Count II. As noted above, this Court denied habeas corpus relief to Plaintiff on this issue in Civil No. 75–1541 on the grounds that he had not pursued administrative remedies within the United States Bureau of Prisons. Defendants contend that this count should again be dismissed because Plaintiff has still not exhausted administrative remedies.

---

5. *See* Memorandum and Order of April 5, 1977.

6. Plaintiff alleges that Defendants' actions interfered with his constitutional right to petition the government for redress of grievances. *See* Complaint.

7. Although Plaintiff has filed several petitions for leave to amend his pleadings, he has at no time indicated that he contests the proposed transfer to the United States Penitentiary at Atlanta. Thus we assume that no claim has been raised in regard to that transfer.

As of the date that Plaintiff filed the amendment to his complaint raising the Lorton issue,[8] he had filed a request for administrative remedy and a regional appeal from the denial of that request.[9] Whether or not Plaintiff filed an appeal with the Central Office is disputed. Defendants contend that he did not, *see* Affidavit of Clair Cripe (Document 29, filed May 23, 1977), and even if he did, that he did so *after* the filing of this action and the amendment raising the Lorton issue, in disregard of the Third Circuit's holding in *United States ex rel. Sanders v. Arnold,* 535 F.2d 848 (1976) (administrative remedies must be exhausted *prior* to the filing of a habeas corpus action).[10] *See* Defendants' Reply to Plaintiff's Opposition (Document 30, filed May 26, 1977). Plaintiff contends that he did file an appeal to the Central Office. *See* Plaintiff's Opposition, Exhibits I and II (Document 26, filed May 23, 1977).

The factual dispute as to whether Plaintiff actually filed an administrative appeal to the Bureau's Central Office is immaterial to the exhaustion issue. The exhaustion doctrine is discretionary. *United States ex rel. Marrero v. Warden, Lewisburg, Penitentiary,* 483 F.2d 656, 659 (3d Cir. 1974), *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). "If pursuing an administrative remedy would be futile, the requirement may be waived". *Id.* at 659. For the reasons that follow, the Court is of the opinion that it would be futile to require Plaintiff to continue his pursuit of administrative remedies, and therefore, that it is irrelevant whether he actually filed an appeal to the Central Office.

The Court in its order requiring exhaustion, Civil No. 75–1541 (M.D.Pa., Oct. 8,

1976), without so deciding, suggested that Bureau of Prisons Policy Statement No. 7400.5D, requiring a hearing prior to a disciplinary transfer, may apply to Plaintiff's circumstances. Since Plaintiff's transfer from Lorton to Lewisburg appeared to violate B.P. Statement No. 7400.5D, the Court believed that the Bureau should have the first opportunity to determine whether a violation had occurred and if so, correct it.

However, in responding to Plaintiff's request for administrative remedy and in denying his regional appeal, the Bureau has taken the position that the Lorton transfer was governed by the policies of the D.C. Department of Corrections and that those policies provide no right to a hearing prior to transfer. Because the Bureau now takes the position that Plaintiff's transfer is governed by the policies of the D.C. Department of Corrections rather than the policies of the United States Bureau of Prisons, the Court is of the opinion that it would be futile to require Plaintiff to further pursue administrative remedies within the Bureau of Prisons.

As we pointed out in our memorandum in *Smith v. Carlson,* No. 75–1541, the issue of Plaintiff's transfer is governed by the rule announced in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). In those cases the Supreme Court held that no constitutionally protected interest is infringed, and thus no hearing required, when a state prisoner is transferred from one institution to another, absent some justifiable expectation, rooted in state law, that he will not be transferred except for misbehavior or upon occurrence of some other specified event.

---

**8.** March 22, 1977.

**9.** In early February, 1977, Plaintiff filed a request for administrative remedy, pursuant to Bureau of Prisons Policy Statement No. 2001.-6A (10–18–74), in which he requested the Bureau of Prisons to schedule an immediate hearing at Lorton on the validity of his transfer from Lorton to Lewisburg, Warden Fenton denied the request on February 16, 1977. Plaintiff then filed a regional appeal, which was received in the Bureau's Regional Office on

February 25, 1977. On March 8, 1977, Regional Director Farkas denied the appeal and informed Plaintiff that he could file an appeal to the Bureau's Central Office if he was dissatisfied with the response. *See* Motion to Schedule Further Hearing, Exhibits "A" and "B" (Document 9, filed March 22, 1977).

**10.** *See also, Talerico v. Warden, U. S. Penitentiary,* 391 F.Supp. 193 (M.D.Pa.1975) (same).

The question of whether Plaintiff was entitled to a hearing prior to transfer to Lewisburg is thus dependent on whether he had a justifiable expectation, based on federal law, that he would remain at Lorton during good behavior or in the absence of some other specified event. Clearly, no such expectation is created by Statute. Section 24–425 of the District of Columbia Code (quoted in part in footnote 4, supra) vests the Attorney General with authority to transfer District of Columbia prisoners to any institution within the federal system, and to transfer them between institutions for any of a number of reasons.

While there is neither a constitutional nor statutory necessity for a hearing prior to transfer, Plaintiff nonetheless contends that a right to a hearing has been created by administrative directive, and having been so created cannot be arbitrarily abridged. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935, 951 (1974). Plaintiff points to two possible sources of such a right. The first of these is Bureau of Prisons Policy Statement 7400.5D, which governs inmate discipline at Bureau of Prisons Institutions. Paragraph (c) of that Policy Statement provides:

"An inmate may not be placed in disciplinary segregation, have his good time withheld or forfeited, be transferred to another institution for disciplinary reasons, or have the Bureau recommend retardation or recission of a parole grant unless there has been a fact finding hearing before the Institution Disciplinary Committee in which the following procedures have been satisfied."

█ Although we suggested·in *Smith v. Carlson,* No. 75–1541 that this provision might govern the instant case, we must, upon reflection, agree with Defendants that this provision is not applicable to the transfer of Plaintiff from Lorton to Lewisburg. Policy Statement 7400.5D by its own terms applies only to internal discipline in Bureau of Prisons institutions. Prior to the time Plaintiff was transferred to Lewisburg he had never been confined in a Bureau of Prisons Institution. Any procedural right to a prior hearing would have to arise, if at all, from a regulation or practice of the District of Columbia Department of Corrections, which had custody of Plaintiff prior to the challenged transfer. Thus Policy Statement 7400.5D cannot serve as a basis for any procedural rights in regard to this transfer.

Plaintiff also claims that a right to a due process hearing prior to transfer arises from District of Columbia Department of Corrections Department Order No. 4810.1 which governs transfer between District of Columbia institutions and institutions of the Bureau of Prisons. Paragraph 6b. of that order provides:

"Upon receipt of notification that a DCDC [District of Columbia Department of Corrections] resident is to be transferred to a FBP [Federal Bureau of Prisons] institution or facility it shall be the responsibility of the institution (facility) Administrator to ensure that the resident is afforded a hearing before a committee consisting of at least three institutional (facility) staff members and advised of the reason(s) for the transfer. During the hearing, the resident shall be afforded an opportunity to indicate any objections, and the rational [sic] for the same, regarding the transfer. . . ."

█ This provision cannot be used as a basis for any procedural rights because it was not promulgated until April 30, 1976, some nineteen months after the transfer here in question, which occurred in September, 1974. At that time there was no policy of providing hearings prior to transfer for District of Columbia prisoners. The District Court for the District of Columbia has specifically held, in *Curry-Bey v. Jackson,* 422 F.Supp. 926 (D.D.C.1976), that such a right was neither available nor constitutionally required prior to the issuance of Department Order 4810.1. Thus we conclude that Plaintiff suffered no constitutional deprivation when he was transferred to Lewisburg without prior hearing and summary judgment will be entered in favor of Defendants on Count II.

As our decision resolves this case on its merits, Plaintiff's motions to compel discovery and to amend the complaint are no longer of any moment and will be denied. Plaintiff's "Motion to Enter Documents as Exhibits", being unopposed, will be granted.

Defendants have also filed a motion for leave to transfer Plaintiff to the United States Penitentiary in Atlanta, Georgia while this action remains pending. As our decision today terminates this action, the motion for leave to transfer is moot, and we will not rule on it. The Bureau of Prisons, of course, retains full discretion to transfer Plaintiff for any proper reason.